Your argument and appeal number 22-1525, PASCO versus United States. Mr. DeFrancesco, whenever you're ready. Go ahead. Good morning, your honors. May it please the court, I'm Robert DeFrancesco on behalf of plaintiff appellant Newport Corporation. This case addresses the Commerce Department's remand determination pursuant to this court's holding in PASCO v. U.S. In PASCO, the court held that a proper analysis of adequate remuneration under any tier of commerce's rules requires determining whether the price paid by a respondent for an input reflects the fair market value of the input. The court instructed commerce in that case to examine the actual cost of producing the electricity and compare it back to the price the respondents paid for that electricity. Commerce's remand determination in this case is unlawful and unsupported by substantial evidence because it did neither of these two things. As a housekeeping matter, are we allowed to speak about some things with respect to kind of the time of purchases? Like I noticed that in some instances certain things were highlighted in some briefs as confidential and other instances were not. And so I just want to know kind of the parameters of how freely we can speak today. Well certainly I wouldn't want to violate the administrative protective order at Commerce. I think we can talk generally about purchasing electricity on peak, off peak, mid peak. Some of that was confidential and I'd actually like to walk your honors through some of that in a minute. I think we can talk about that publicly. How much is purchased and the prices they're purchased at? Probably not. So this court remanded Commerce's determination in the original investigation for failing to base its analysis on the actual cost of generating electricity and supplying that electricity and instead relied on a transfer price, a distorted government set price between government affiliates. First, Commerce has still not considered the actual cost of generating the electricity in this case as the court directed it to. The court directed it specifically, and I'm going to quote from the opinion here, it found that it's implausible that Commerce adequately investigated Korea's prevailing market conditions for electricity without a thorough understanding of the cost associated with generating and acquiring that electricity. That's at 1377 in the POSCO case. In that same section, the court went on to state that faulting Commerce, because it did not consider the cost associated with the generators themselves, did not request information regarding KPX's cost of electricity and generation, such as variable fuel costs, the price for construction and maintenance costs, and the standard of electricity generation on a unit basis and fixed costs. Commerce still has not requested any of that information. When your case got remanded in light of POSCO 4, did you request that the record be reopened? Your Honor, Commerce took the remand back, reissued its determination without allowing parties to submit new information. We did request in the briefing that we pointed out that you didn't comply and that... Well, I'm just trying to understand. Did you make a request? Can you please reopen the record so that we can... Procedurally, typically the way these remands work at Commerce, when they go back, Commerce will either on its own reopen the record or they'll make a redetermination. When they made the redetermination, they allow parties to comment on that redetermination, which is where we said you haven't complied, you should have reopened the record. I guess what I'm trying to... Oh, you said you should have reopened the record. I'll have to check to confirm that, but I believe we did in our briefing. All right. I'd be interested in seeing that. Certainly. Second, Commerce has not determined whether the prices actually paid by the respondents reflected that fair value. In its remand results, Commerce asserts that Commerce determined that the prices charged to the respondent by KEPCO more than fully covered its cost. That characterization is simply wrong and it's not supported by substantial... There was a lot of analysis that happened on remand. They went back and looked at all the pricing of... Well, they looked at all those subsidiaries that sold the electricity to KEPCO and they concluded through the 20th form that, in fact, all of those subsidiaries were profitable and paying out dividends during the relevant period of investigation. So we know that there wasn't any kind of below market sales to KEPCO that could have allowed KEPCO to forward on such below market prices to POSCO. With all due respect, Your Honor, that's not the analysis. The statute requires... Well, it's part of the analysis though. I mean, there's certainly nothing wrong in doing that. In fact, that was one of the key things that Commerce was required to go back and look at, right? What was going on at the KPX level? Right. And they never did that. They never requested actual costs from the generators. They never requested information from KPX. Well, I guess what I'm wondering is what's wrong with relying on the data that was available, which concluded the 20th form, which clearly showed that all of these different subsidiaries were, in fact, operating at a profit and, in fact, issuing dividends. So we know that at least at that level, they weren't selling below market. So with all due respect, Your Honor, that is a cost to the government analysis, which is not required under the statute. What's required is whether there's a benefit to the recipient. The fact that the government may generally be profitable, the government authority, it doesn't say anything about whether the government, when it sells that electricity to the respondent, is selling that electricity above or below cost. And if I may, if I could walk you through some of the documents here. I guess what I'm trying to understand is at the KPX level, what is it that you had expected Commerce to do more in light of what we said in the POSCO IV remit? They should have got the actual cost of generating the electricity at the time it was sold to the generated by whom? By all those subsidiaries? So all of the wholly owned... You want the actual electricity that POSCO ultimately used, you want to trace it all the way back to the KPX level subsidiaries and see how much it cost those subsidiaries to make that very quantum of electricity that POSCO ultimately used? I'm a little bit... That seems so unrealistically granular, it doesn't make any sense. So the way the KPX system works is on an hourly basis, they understand what each of the generators are producing the electricity at and selling it into the system and they reimburse those generators at a certain price. And then some quantum of that price flows to KPX or KEPCO rather. KEPCO then sets its electricity pricing to the respondent. So you would have to know at the time the respondent was purchasing the energy, whether it's mid-peak, off-peak, on-peak, what was the actual cost of that electricity that they were buying? And they've reported that in the record here. And if I might, Your Honor, I think those will be clearer if I walk through it. So at appendix page 8528, this is... Again, this is a transfer price, this is not the actual generator's cost. This was already on the record previously. But what the government is saying is under the standard that the tariff schedule that steel producers are in, which is the industrial standard B, they identify the per unit cost for all of the electricity that were sold to all of the customers in that class, of which POSCO is a member. And they said, well, those prices generally recovered costs. But if you flip over to what POSCO actually purchased, which is in appendix 4032, which identifies the three classes that we were just discussing, where it's off-peak, on-peak, and mid-peak, and you average all of those prices together, it has the per unit price that they were charged and the amount of electricity they consumed that is substantially lower than that price that we just discussed. Which means the prices that they're purchasing the electricity at, the vast majority when they're buying it, they're buying it below cost. They're buying it below KEPCO's cost, and that's not counting. Just so I understand, to go with your argument is to say that KEPCO can't do on-peak, mid-peak, off-peak pricing schedules? No, it can. It just has to price that electricity at a... Okay, so the off-peak has to be cost recovery. I'm trying to understand your view. The error in their industrial classification for the tariff schedule for this electricity needs for every single price point, off-peak, on-peak, each one of those has to be cost recovery. For the electricity that was produced at the time it was sold. For example, if you're buying off-peak, you may be buying from nuclear generators mostly. They have a different cost structure. Those are sold into the KPX. The KPX identifies those at the time that's being produced and when it's being sold. They can identify that and they should identify that. What I'm wondering is, just as a general matter, off-peak means the demand is much lower than on-peak periods. Why wouldn't it just be normal market principles to be able to attract a little more demand during off-peak, super low demand time periods by offering a lower price, maybe even lower than true cost recovery because you're trying to recover something during that off-peak time period? Compared to the high-peak period. Certainly, but the adequate remuneration standard in the statute requires an examination of whether the input that I'm purchasing recovered cost. Here, the overwhelming amount of the electricity purchased didn't recover cost for that specific respondent, for these specific respondents. For the overall industrial classification, it did recover cost. Right, which means they were recovering cost to other companies that are not, there's a whole group of other companies that are in that classification, which doesn't answer the statutory question about the benefit to the respondent. In this scenario, the benefit to the respondent was significant. Even in the 20Fs that Your Honor was referring to, if you look at 157, which is appendix tab 15711, in that 20F, it identifies the general unit price in a wand per kilowatt per generator. The average is 82, that's public so I can say this publicly, is about 82 wand per kilowatt. Again, going back to that table I just discussed, averaging all of that together, it's far below that price. Whichever way you slice it, the data on the record shows that the overwhelming majority of the electricity purchased here is purchased below cost. We still, to this day, don't have the actual cost of generating the electricity at the time it was purchased. You're into your rebuttal. Do you want to save it or do you have other points you want to make? I do, Your Honor, if I can reserve the rest of my time. Okay, very good. Thank you. May it please the Court. I'd like to start where my friend left off in the weeds on the cost comparisons. What's important to understand here is that the cost comparisons that Newport is making now are not actually related to what Commerce found are the prevailing market conditions that are reflected in CAPCO's tariff amounts. So the comparisons that are being made here are a comparison between off-peak electricity use, which is reflective of the cost of maintaining an electricity grid, and comparing them to the average of costs to produce electricity. So that's apples and oranges. That's not an appropriate way to assess... Was there a finding by Commerce that during off-peak periods, whatever the off-peak price is, is doing cost recovery for the cost of generating electricity during the off-peak period? So what Commerce found... I understand that Commerce didn't make that specific determination, right? Well, it's incorporated in what Commerce did find about CAPCO's tariff schedule, and I'd like to highlight three different elements of those findings. So in Exhibit E15, that's the tariff schedule for 2015, and it reflects a lot of what Commerce found were prevailing market conditions, such as voltage, electricity demand, peak versus off-peak being one of those. And Commerce then explained in theory how not only is CAPCO required by law to recover its costs, but Commerce explained in theory, based on the government of Korea's responses, how those costs and demand translates into each different piece. And a snapshot of that is at 6001 of the appendix. You can see how it's a very detailed cost analysis and assessment of demand. 6001? Yes. And some of that is confidential. That's just a snapshot. And then Commerce also explained the broader theory at the Remand Redetermination, page 23268. Well, is there something specific you want me to look at? Well, I'm listing these as... this is how the CAPCO tariff schedule costs were assessed. And then not only did Commerce determine that those costs were... that the actual costs and projected costs were how the tariff schedule was created, but at E16, which is what Mr. DiFrancesco was referencing at A528, that's the 2014 delineation of the cost recovery analysis showing that CAPCO not only recovered costs, but also a return on investment. Is that the 2014 cost data? That's the 2014 cost data, which Commerce found was probative based on the decrease in fuel prices and the relatively stable electricity demand for 2015. Right. But as I understand it, it was establishing that there was cost recovery plus some return for the industrial classification as a whole, not when you break it down into subtypes within that overall classification category. Is that correct? That's right, Your Honor. But I would push back on the notion that Commerce is... that, for example, this Court's decision in New Court requires Commerce to engage in a certain specific level of granularity specific to off-peak versus on-peak. Commerce reasonably found that those considerations are conditions of purchase or sale consistent with the statutory scheme. They are consistent with the regulation for a Tier 3 analysis, like this one, where there is no in-country benchmark price. There is no worldwide benchmark price. And what this Court highlighted in its 2019 decision in New Court is that, to be sure, Commerce can't engage in a preferentiality, a pure preferentiality test of price discrimination alone. It has to consider market principles. But the Court made clear that Commerce still retains a great deal of discretion in how to apply the statute and engage in cost recovery. And that's what Commerce did here. So hypothetically, if CAPCO made a business decision to sell off-peak at below cost, and POSCO made a business decision that it could also run its operations to buy mostly at off-peak, so it would also be buying reduced at below cost. But nevertheless, if you look at CAPCO's total power sales, there was cost recovery. Is that, in your view, not countervailable because the whole system has actual cost recovery, even if the off-peak doesn't? So I think the question is whether, as a whole, there is cost recovery. And I would point out that in some subsequent proceedings, there's been specific arguments made raising the question of, and exhausting the question before Commerce, of getting really into the nitty-gritty question. And in those cases, Commerce has gone the extra step and delineated how the costs that are actually paid by the respondents enable cost recovery. That sort of nitty-gritty argument really wasn't made here, but the issues that have been at play throughout this case have been, has Commerce applied... Is that the argument that I think Judge Chen suggested, that even if you're pricing low-peak, off-peak power at below cost, if it encourages people to buy it, you're still getting some cost recovery rather than not selling it at all? That's right. And that's consistent with the nature of maintaining an electricity grid, where, for example, nuclear producers have to produce all the time. So if purchasers aren't purchasing during off-peak times, that's just electricity that's been wasted. So I think exactly as Your Honor was pointing out, there are incentives, market-based and market-based principles, that support encouraging companies like large users of electricity to use electricity during those off-peak times. What is your best support for saying you don't have to get as granular as opposing counsel contends you need to get here? So I think twofold. One is the decision in Nucor, which highlighted that although Commerce can't engage in a pure price discrimination analysis, Commerce retains a large range of potential choices. And the two-step analysis that was ultimately sustained in Nucor is quite similar to the one here, except that this one, based on the guidance from POSCO, also has the added element of the generation cost, which have already been discussed here today and indeed is supported by the record. So to the extent that there's critique about Commerce didn't do the cost analysis in exactly this way or that way, the statute just says that Commerce has to consider whether this is being provided at less than adequate remuneration based on prevailing market conditions. Commerce has done that. The regulation for a tier three analysis is again, it's not one where we have clear benchmarks based on market prices in-country or worldwide. Commerce has discretion in how to do the cost recovery analysis. And the court in Nucor also highlighted that this is the area of utilities. This is not a particularly novel issue. You see this throughout the law, not just in Commerce, but across the board. And so a cost recovery type analysis is appropriate. There's no need to go in and figure out, well, when you're incentivizing off-peak use, are you specifically recovering costs then? Because there's a lot of market-based rationales that may implicate why it would make sense for KEPCO to do that, to maintain the electricity grid. Commerce didn't quite say all that, though, in its redetermination. What you're saying now about, let's look holistically. We've got a problem here, off-peak versus on-peak. There's a price differential there. On the one hand, one could imagine that the on-peak pricing is subsidizing the off-peak pricing because you're not really recovering costs for those off-peak uses, and you've got to make that up somewhere. So we're going to make that up on the on-peak purchasers, and we're going to put it on their backs. But at the same time, one could imagine that KEPCO reasonably was trying to incentivize people to purchase off-peak. And so this is how they have to do it in order to get anybody to come out and use it during off-peak. Commerce didn't say any of that. Well, I would push back on that a bit, because what Commerce explained is cost recovery analysis is looking to cost recovery as a whole. And it explained that the tariff schedule in Exhibit 15 was reflecting market-based principles. So maybe there's a lot worked into that, and I would also highlight that looking back, Commerce highlighted the arguments that were made to it on remand. That's all incorporated in the remand determination. But they did this argument that the purchases by Costco were at this discounted rate during the off-peak periods, and so therefore there's some kind of subsidy lurking in that. So the important thing from Commerce's perspective is this two-step analysis that was sustained by this court in Nucor. And the purpose for the remand was really to address the generation consideration and also KPX, which I think has been at issue in these cases. This court in Nucor sustained the two-step analysis and didn't require the type of granularity that Nucor is now contending is necessary. And it would be, well, it wasn't required. It would be logistically challenging in some ways, because a lot of the, some of the, the six KEPCO subsidiaries produce about 80% of electricity, but there's also a lot of private entities that produce electricity and, and whose electricity is purchased by KPX and, and, you know, through KPX to KEPCO. So, you know, Commerce engaged in an appropriate cost recovery analysis, and that's really it when it comes to the question of has Commerce complied with the statute? Has Commerce complied with the guidance in Nucor and Costco? Has Commerce complied with its regulations? The answer to all those questions... Reopen the record to go get the 2015 cost data. I mean, that would be the best data available, instead of having to try to twist itself into a pretzel and cobble together data from other years in order to try to figure out what actually was the 2015 cost data. Yeah, and I hear that, Your Honor. However, the question on review is, did, was there substantial evidence in the record that supports what Commerce did find? And the answer to that is yes. Commerce, the decision of whether to reopen the record is a discretionary one for Commerce to decide, and what the, the, again, the key piece coming down the Court's guidance from Costco was addressing generation. So that was the focus, and Commerce was able to very, as the Court has acknowledged, to look at items already in the investigation record. So that was appropriately what Commerce was focused on. Did the new Court urge Commerce to open the record to go get the 2015 cost data? So I, in reading the remand, I didn't see, they did argue that the, that there was no period, there was no POI, period of investigation, specific cost data. Your Honor, standing here right now, I couldn't say whether or not what they specifically asked to reopen. They did raise the argument about the period of information, but Commerce reasonably looked at the 2014 data, looked to the other information in the record about why it would be, why the 2014 data is probative of the year 2015, and made a determination on that basis. I see I only have a few minutes left. I'd like to very briefly address one issue to do with KPX that, that I think is important. Coming from the reply brief, there's, there's still this argument that Commerce erred by even this Court in POSCO at page 13, 16, 1377, where the Court in, in saying that Commerce didn't adequately consider the, any benefit being conferred from KPX to KEPCO cited the upstream subsidy statute, which is 1677-1, and the portion of the Statement of Administrative Action, which also references the upstream allegation. And that makes sense because KPX is not KPX through its pricing electricity conferred a competitive benefit to KEPCO that then has a downstream benefit, and that's an upstream subsidy type analysis. So I just wanted to clarify that, that, that that analysis originated in this Court's decision in POSCO. If there are no further questions, I respectfully request that you affirm. Thank you, Your Honors. There are a few points I'd like to hit. And going specifically first, back to the questions about off-peak, on-peak, and where is that in the record? Can you also answer the question of whether or not you actually made the request to reopen the record? Certainly. We went back and looked. I did not find a letter, a formal letter requesting reopening the record. We did argue that the methodology in our comments was incorrect and didn't comply with the Court's order. But we did not formally request that they reopen the record, which is, frankly, on remand, you don't normally file comments before Commerce opens its record up for comment after it issues its remand determination. So it would have been unusual that a party does that anyway. But going back to Your Honors' questions about off-peak, on-peak, all of that is post hoc. Commerce didn't analyze any of that in its determination. It didn't request any of that information. It didn't request that information from KPX. Comments about generators and why they might sell at certain periods of time. The Cost Evaluation Committee at KPX collects the actual cost at the hour the energy is generated from the generator. They have that information. None of it's on this record. Going back to the analysis about, well, Tier 3 allows us to do this holistic analysis of benefit, and we don't have to go back to what the recipient actually purchased. That's Commerce's regulations. It has no bearing at all on the statute. The statute doesn't make a distinction between Tier 1, Tier 2, Tier 3. The statute simply talks about less than adequate remuneration, and when you're calculating that benefit, it has to be calculated based on the benefit to the recipient. Commerce's Tier 1 and Tier 2 doesn't make any sort of, is specific. It goes directly to what did the recipient pay. In Tier 3, they often do the same thing. They just didn't do it in this case. Just going back to something that I raised earlier, is the consequence of going with your argument that KEPCO's tariff schedule is flawed and KEPCO has to redo its tariff schedule for basically the entire electricity market of Korea in order to ensure that those Korean companies that actually end up exporting goods to the United States, those companies are buying their electricity above cost at all times, on peak, off peak, et cetera. Is that fair to say that's the consequence of going with your argument? I think for the specific tariff schedule as it is, it's the entire schedule for the entire country, for the entire electricity market. Well, no. The tariff schedule we're talking about, both ourselves and the government are talking about, is the schedule specific to the industrial users. The industrial classification. For that specific classification. I think they would have to adjust the tariff schedule to once a year. It's based on costs that they anticipate. Are you saying that if KEPCO decides, as a matter of smart business principles, that it wants to encourage the use of off-market electricity to promote the power grid, particularly these nuclear energy suppliers, that it can't sell below cost, otherwise it's unavailable? I think, Your Honor, we're actually confusing. No, no, no. Answer that. That's a hypothetical. You may have disagreements here, but it seems to me that if a country and an electricity supplier determines we have high-peak demand, we have mid-peak demand, and we have low-peak demand, and in order to make our power grid more efficient, we're going to sell low-peak below cost because at least we recover something, and we're going to sell high-peak way above cost, and overall, hypothetically, they recover costs for all of it. Is that not permissible under our countervailing duty laws? It would have to be examined as the specificity analysis. What we're talking about now is the degree to which the subsidy is specific. You mean you have to go back and look to see exact... My hypothetical assumes that they're selling below the cost that the generators are doing, but nevertheless, as a whole, KEPCO wants to do this because it improves the power grid efficiency, whatever. You're saying they can't do that? No, I'm saying a subsidy analysis, multiple parts. Was it a financial contribution? Let's just assume, hypothetically, that's what happened here, and that there's evidence in the record to support that. Is that sufficient to support Commerce's determination here? No. I think you would have to examine the degree to which, when they decide to sell below cost, and when they're making that decision, who's buying? How many companies are buying? If we're only talking about steel mills that are buying at that time, then the decision to make that decision about selling below cost means there's only one consumer, and one or two consumers that are making those purchases. That decision, while there may be some commercial aspect to it, is really a decision to benefit those consumers, which is an element of specificity, which is not a benefit analysis. A benefit analysis should simply be, what was the price that the respondent purchased the electricity at, and what did it cost? If there's a delta, there's a benefit. Then we'll examine specificity, as Your Honor mentioned, and the decision about who's buying at when you're that decision. If it's only steel producers, then it's specific. We don't have anything in the record about who's buying industrial classification off-peak. We do not, because this issue, Your Honor, focuses solely on the benefit determination. It does not address specificity, as we're just discussing. Okay. Thank you. I see my time is up. Thank you, Your Honors. The case is submitted.